# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION | ) ) ) ) MDL No. 2262 |
| _____ | ) ) Master File No. 1:11-md-2262-NRB |
| THIS DOCUMENT RELATES TO: | ) ) |
| THE BERKSHIRE BANK, et al., | ) ECF Case ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| BANK OF AMERICA CORPORATION, et al. | ) Civil Action No. 12-CV-5723-NRB ) |
| Defendants. | ) ) ) ) |

**LENDER PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO (1) PRELIMINARILY APPROVE SETTLEMENT WITH DEFENDANTS CITIBANK AND HSBC, AND PLAN OF DISTRIBUTION, (2) CONDITIONALLY CERTIFY SETTLEMENT CLASS, AND (3) APPOINT SETTLEMENT CLASS COUNSEL (4) APPROVAL OF NOTICE PROGRAM AND (5) PRELIMINARY APPROVAL OF PLAN OF DISTRIBUTION**

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................ 1

II. SUMMARY OF THE LITIGATION AND SETTLEMENTS .............................. 1

III. THE SETTLEMENTS SHOULD BE PRELIMINARILY APPROVED .............. 1

    A.  The Standard For Preliminary Approval ...................................... 1

    B.  The Settlements Are Presumed To Be Fair ................................... 3

    C.  The Settlements Are Fair And Reasonable Under Relevant *Grinnell* Factors .................................................................................. 3

        1.  The Complexity, Expense, and Likely Duration of the Litigation . 4

        2.  The Reaction of the Class to the Settlements ............................. 5

        3.  The Stage of the Proceedings ................................................ 5

        4.  The Risks of Establishing Liability and Damages ...................... 6

        5.  The Risks of Maintaining the Class Action through Trial ............. 7

        6.  The Ability of Settling Defendants To Withstand a Greater Judgment ........................................................................... 8

        7.  The Reasonableness of the Settlements in Light of the Best Possible   Recovery and the Attendant Risks of Litigation ........... 8

IV. THE SETTLEMENT CLASS SHOULD BE CERTIFIED ............................ 10

    A.  Rule 23(a) Requirements ....................................................... 10

        1.  Rule 23(a)(1) -- Numerosity ................................................ 11

        2.  Rule 23(a)(2) -- Commonality .............................................. 11

        3.  Rule 23(a)(3) -- Typicality ................................................. 12

        4.  Rule 23(a)(4) -- Adequacy ................................................. 13

    B.  Rule 23(b)(3) Requirements .................................................. 13

1.  Predominance ................................................................................... 13

2.  Superiority ........................................................................................ 15

C.  Plaintiffs' Counsel Should Be Appointed Counsel for the Lender Class . 16

V.  THE PROPOSED NOTICE PLAN SHOULD BE APPROVED ........................ 17

A.  Plaintiffs' Proposed Notice Program, which Provides Direct Notice to All Reasonably Ascertainable Lender Class Members as well as a Robust Publication Notice, Is the Best Practicable Under the Circumstances ...... 17

B.  The Individual Notice, the Summary Notice, and the Proof of Claim Form Comply with Rule 23(c)(2)(B) and Comport with Due Process .............. 19

VI.  THE PLAN OF DISTRIBUTION SHOULD BE APPROVED .......................... 22

VII.  PROPOSED TIMETABLE ................................................................ 24

CONCLUSION ...................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Amchem Prods., Inc. v. Windsor,*
     521 U.S. 591 (1997)..............................................................................10, 11, 14, 15

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds,*
     568 U.S. 455 (2013)..............................................................................13, 14

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,*
     222 F.3d 52 (2d Cir. 2000).........................................................................13

*Bellifemine v. Sanofi-Aventis U.S. LLC,* No. 07 Civ. 2207 (JGK),
     2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010).........................................................5

*Bolanos v. Norwegian Cruise Lines Ltd.,*
     212 F.R.D. 144 (S.D.N.Y. 2002) .................................................................12

*Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.,* No. 85 CIV. 3048 (JMW),
     1987 U.S. Dist. WL 7030 (S.D.N.Y. Feb. 13, 1987) ...............................................7

*Catholic Health Care West v. US Foodserv. (In re U.S. Foodservice Inc. Pricing Litig.),*
     729 F.3d 108 (2d Cir. 2013)........................................................................15

*Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.,*
     504 F.3d 229 (2d Cir. 2007)........................................................................11

*Charron v. Pinnacle Grp. N.Y. LLC,*
     874 F. Supp. 2d 179 (S.D.N.Y. 2012)................................................................6

*Charron v. Wiener,*
     731 F.3d 241 (2d Cir. 2013).........................................................................6

*City of Detroit v. Grinnell Corp,*
     495 F.2d 448 (2d Cir. 1974).................................................................. *passim*

*Cohen v. J.P. Morgan Chase & Co.,*
     262 F.R.D. 153 (E.D.N.Y. 2009) ..................................................................10

*Cordes & Co. Fin. Services, Inc. v. A.G. Edwards & Sons, Inc.,*
     502 F.3d 91 (2d Cir. 2007)........................................................................15

*Demney v. Jenkins & Gilchrist,*
     230 F.R.D. 317 (S.D.N.Y. 2005),
     *vacated in part on other grounds,* 443 F.3d 253 (2d Cir. 2006).............................12

*Ebin v. Kangadis Food Inc.*,
    297 F.R.D. 561 (S.D.N.Y. 2014) ...........................................................................15

*Fleisher v. Phoenix Life Ins. Co.*, No. 11 Civ. 8405 (CM),
    2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015)........................................................5

*Fleisher v. Phoenix Life Ins. Co.*, No. 11-cv-8405 (CM),
    2015 U.S. Dist. LEXIS 121574 (S.D.N.Y. Sept. 9, 2015)......................................8

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000)......................................................................................4

*Haddock v. Nationwide Fin. Services, Inc.*,
    262 F.R.D. 97 (D. Conn. 2009)..............................................................................11

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ...............................................................................14

*Hart v. BHH, LLC*,
    2017 U.S. Dist. LEXIS 105187 (S.D.N.Y. July 7, 2017) ......................................15

*Hart v. RCI Hosp. Holdings, Inc.*, No. 09cv3043 (PAE),
    2015 WL 5577713 (S.D.N.Y. Sept. 22, 2015)......................................................22

*In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*,
    271 F. App'x 41 (2d Cir. 2008) .............................................................................17

*In re "Agent Orange" Prod. Liab. Litig.*,
    597 F. Supp. 740 (E.D.N.Y. 1984) .........................................................................8

*In re Agent Orange Prod. Liab. Litig.* MDL No. 381,
    818 F.2d 145 (2d Cir. 1987).................................................................................12

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
    689 F.3d 229 (2d Cir. 2012)............................................................................14, 15

*In re AOL Time Warner, Inc.*, No. 02 Civ. 5575 (SWK),
    2006 WL 903236 (S.D.N.Y. Apr 6, 2006)..........................................................5, 9

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000)......................................................................3

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
    909 F. Supp. 2d 259 (S.D.N.Y. 2012)....................................................................9

*In re Blech Sec. Litig.*,
    187 F.R.D. 97 (S.D.N.Y. 1999) ............................................................................11

*In re CertainTeed Corp. Roofing Shingle Prods. Liability Litig.*,
    269 F.R.D. 468 (E.D. Pa. 2010)............................................................22

*In re Chambers Dev. Sec. Litig.*,
    912 F. Supp. 822 (W.D. Pa. 1995)........................................................9

*In re Credit Default Swaps Antitrust Litig.*, No. 13MD2476 (DLC),
    2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016)........................................22

*In re Currency Conversion Fee Antitrust Litig.*,
    224 F.R.D. 555 (S.D.N.Y. 2004) ..........................................................16

*In re Elec. Books Antitrust Litig.*, No. 11md2293 (DLC),
    2014 WL 1282293 (S.D.N.Y. Mar. 28, 2014) ......................................22

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM),
    2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27,2007) ......................23

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    574 F.3d 29 (2d Cir. 2009)...................................................................12

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................2, 8

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
    142 F.R.D. 588 (S.D.N.Y. 1992) ..........................................................24

*In re Holocaust Victim Assets Litig.*,
    424 F.3d 132 (2d Cir. 2005).................................................................22

*In re IMAX Sec. Litig.*,
    283 F.R.D. 178, 192 (S.D.N.Y. 2012) ...............................................2, 24

*In re IPO Sec. Litig.*,
    226 F.R.D. 186 (S.D.N.Y. 2005) ..........................................................10

*In re IPO Sec. Litig.*,
    260 F.R.D. 81 (S.D.N.Y. 2009) ............................................................9

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*, Nos. 11 MDL 2262 (NRB),
    2014 U.S. Dist. WL 6851096 (S.D.N.Y. Dec. 2, 2014)..........................2

*In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262(RWS),
    2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002)....................................24

*In re MetLife Demutualization Litig.*,
    689 F. Supp. 2d 297 (E.D.N.Y. 2010) ...............................................8, 17

*In re Michael Milken & Assocs. Sec. Litig.*,
    150 F.R.D. 57 (S.D.N.Y. 1993) ..............................................................................5, 9

*In re NASDAQ Market-Makers Antitrust Litig.*,
    169 F.R.D. 493 (S.D.N.Y. 1996) ...........................................................................2, 14

*In re NASDAQ Market-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) .........................................................................6, 7, 9

*In re PaineWebber Ltd. P'ships. Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ...........................................................................3, 22

*In re Payment Interchange Fee & Merch. Discount Antitrust Litig.*, No. 05-MD-1720,
    2008 U.S. Dist. LEXIS 1369 (E.D.N.Y. Jan. 8, 2008) ............................................20

*In re Platinum & Palladium Commodities, Litig.*, No. 10 Civ. 3617,
    2014 WL 3500655 (S.D.N.Y. July 15, 2014) ...........................................................15

*In re Platinum & Palladium Commodities Litig.*, No. 10 CV 3617,
    2015 U.S. Dist. LEXIS 178127 (S.D.N.Y. Feb. 27, 2015)......................................19

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995) ..............................................................................11

*In re Sinus Buster Prods. Consumer Litig.*, No. 12-CV-2429 (ADS) (AKT),
    2014 U.S. Dist. WL 5819921 (E.D.N.Y. Nov. 10, 2014)..........................................8

*In re Stock Exchs. Options Trading Antitrust Litig.*, No. 99 Civ. 0962 (RCC),
    2005 WL 1635158 (S.D.N.Y. July 8, 2005) ...............................................................1

*In re Sumitomo Copper Litig.*,
    194 F.R.D. 480 (S.D.N.Y. 2000),
    *aff'd*, 262 F. 3d 134 (2d Cir. 2001) ........................................................................11

*In re Sumitomo Copper Litig.*,
    74 F. Supp. 2d 393 (S.D.N.Y. 1999)...........................................................................4

*In re Top Tankers, Inc. Sec. Litig.*, No. 06 CIV. 13761 (CM),
    2008 U.S. Dist. WL 2944620 (S.D.N.Y. July 31, 2008) ............................................6

*In re Vitamin C Antitrust Litig.*, No. 06 MDL. 1738,
    2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012)..............................................................4

*In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 (BMC) (JO)
    2012 U.S. Dist. LEXIS 152275 (E.D.N.Y. Oct. 23, 2012)................................19, 20

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985) .............................................................................7

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005)..................................................................22

*J. Truett Payne Co., Inc. v. Chrysler Motors Corp.*,
   451 U.S. 557 (1981)...........................................................................................22

*Jermyn v. Best Buy Stores, L.P.*, No. 08 CIV. 00214 CM,
   2010 WL 5187746 (S.D.N.Y. Dec. 6, 2010) .......................................................17

*Long v. HSBC USA Inc.*, No. 14 CIV. 6233 HBP,
   2015 WL 5444651 (S.D.N.Y. Sept. 11, 2015).....................................................17

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997)...............................................................................11

*Maywalt v. Parker & Parsley Petroleum Co.*,
   147 F.R.D. 51 (S.D.N.Y. 1993) ..........................................................................15

*Maywalt v. Parker & Parsley Petroleum Co.*,
   67 F.3d 1072 (2d Cir. 1995)..................................................................................8

*McLaughlin v. Am. Tobacco Co.*,
   522 F.3d 215 (2d Cir. 2008)...............................................................................15

*McReynolds v. Richards-Cantave*,
   588 F.3d 790 (2d Cir. 2009).................................................................................2

*Menkes v. Stolt-Nielsen S.A.*,
   270 F.R.D. 80 (D. Conn. 2010).......................................................................2, 11

*Meredith Corp. v. SESAC, LLC*,
   87 F. Supp. 3d 650 (S.D.N.Y. 2015).....................................................................7

*Moore v. PaineWebber, Inc.*,
   306 F.3d 1247 (2d Cir. 2002).............................................................................15

*Nationwide Life Ins. Co. v. Haddock*,
   460 Fed. Appx. 26 (2d Cir. 2012) .......................................................................12

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972).................................................................................8

*Park v. The Thomson Corp.*, No. 05 Civ. 2931,
   2008 WL 4684232 (S.D.N.Y. Oct. 22, 2008) ........................................................6

*Precision Products v. Panalpina World Transp., Ltd.*, 08-cv-42 (JG) (VVP)
   2013 U.S. Dist. LEXIS 121795 (E.D.N.Y. Aug. 27, 2013)....................................23

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
    237 F.R.D. 26 (E.D.N.Y. 2006) ........................................................................5

*Roach v. T.L. Cannon Corp.*,
    778 F.3d 401 (2d Cir. 2015)...........................................................................14

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993)...........................................................................13

*Rodriguez v. It's Just Lunch, Int'l*,
    300 F.R.D. 125 (S.D.N.Y. 2014) ...................................................................15

*Seijas v. Republic of Argentina.*,
    606 F.3d 53 (2d Cir. 2010)..............................................................................16

*Spencer v. Hartford Fin. Servs. Grp., Inc.*,
    256 F.R.D. 284 (D. Conn. 2009).....................................................................15

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003).............................................................4

*Sykes v. Mel S. Harris & Assocs., LLC*, No. 09 Civ. 8486 (DC),
    2015 U.S. Dist. LEXIS 170179 (S.D.N.Y. Nov. 16, 2015) ...........................18

*Sykes v. Mel. S. Harris & Assocs., LLC*, No. 09 Civ. 8486 (DC),
    2016 U.S. Dist. LEXIS 74566 (S.D.N.Y. May 24, 2016).............................23

*Virgin Atl. Airways Ltd. v. British Airways PLC*,
    257 F.3d 256 (2d Cir. 2001)............................................................................4

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005).................................................................2, 5, 9, 19

*Weigner v. City of New York*,
    852 F.2d 646 (2d Cir. 1988)...........................................................................17

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982).............................................................................19

*Xuechen Yang v. Focus Media Holding Ltd.*, No. 11-civ-9051 (CM) (GWG),
    2014 U.S. Dist. LEXIS 126738 (S.D.N.Y. Sept. 4, 2014)............................23

## <u>Rules</u>

Federal Rule of Civil Procedure 23 ................................................................... *passim*

## I.      INTRODUCTION

Plaintiffs The Berkshire Bank ("Berkshire") and The Government Development Bank of Puerto Rico ("GDB" and together with Berkshire, the "Lender Plaintiffs" or "Plaintiffs") for themselves and on behalf of the settlement class described below, respectfully submit this memorandum in support of their motion for preliminary approval of the proposed settlement in the above-captioned litigation (the "Lender Action") with Citibank, N.A. and Citigroup Inc. (collectively, "Citibank") as well as HSBC Bank plc ("HSBC" and together with Citibank and HSBC Holdings plc, the "Settling Defendants").[1] Pursuant to the Settlements, Citibank has agreed to pay $23 million and HSBC has agreed to pay $4 million. The Settlements, which were negotiated at arm's length by experienced counsel, are reasonable and appropriate, and are deserving of preliminary approval by the Court.

## II.     SUMMARY OF THE LITIGATION AND SETTLEMENTS

Plaintiffs refer the Court to the accompanying Lieberman Declaration concerning the history of the litigation, the claims asserted, and the negotiations of the settlements. Lieberman Decl. ¶¶ 5-37.

## III.    THE SETTLEMENTS SHOULD BE PRELIMINARILY APPROVED

### A.      The Standard For Preliminary Approval

"Preliminary approval is generally the first step in a two-step process before a class action settlement is approved." *In re Stock Exchs. Options Trading Antitrust Litig.*, No. 99 Civ. 0962 (RCC), 2005 WL 1635158, at *4 (S.D.N.Y. July 8, 2005). "In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice" and "[o]nce preliminary approval is bestowed, the second step of the process ensues: notice is

---

[1] All capitalized terms used herein have the meanings set forth and defined in the Settlement Agreements with Citibank and HSBC (the "Settlement Agreements").  True and correct copies of the Settlement Agreement with Citibank and the Settlement Agreement with HSBC are attached as Exhibit 1 and Exhibit 2, respectively, to the accompanying Declaration of Jeremy A. Lieberman ("Lieberman Decl.").

given to the class members of a hearing, at which time class members and the settling parties may be heard with respect to final court approval." *NASDAQ I*, 176 F.R.D. at 102.

In determining whether to grant preliminary approval to a settlement, the court should consider both the "negotiating process leading up to the settlement, *i.e.*, procedural fairness, as well as the settlement's substantive terms, *i.e.*, substantive fairness." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803–04 (2d Cir. 2009). Preliminary approval "is appropriate where [the settlement] is the result of serious, informed, and non-collusive negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies . . . , and where the settlement appears to fall within the range of possible approval." *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 101 (D. Conn. 2010). As this Court has recognized, "[p]reliminary approval is not tantamount to a finding that [a proposed] settlement is fair and reasonable. . . . Instead, at this stage, we need only decide whether the terms of the Proposed Settlement are at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, Nos. 11 MDL 2262 (NRB), 2014 U.S. Dist. WL 6851096, at *2 (S.D.N.Y. Dec. 2, 2014) (internal quotation marks and citation omitted). Moreover, "not every factor must weigh in favor of settlement, rather the court should consider the totality of these factors in light of the particular circumstances." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004) (internal quotation marks and citation omitted). Further, in reviewing proposed settlements, courts should recognize the "strong judicial policy in favor of settlements." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 188 (S.D.N.Y. 2012) (Buchwald, J) (citation omitted); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005).

As set forth below, the Settlements meet this standard and satisfy factors identified by this Court (*see LIBOR*, 2014 WL 6851096, at *2), and should therefore be preliminarily approved.

2

## B.    The Settlements Are Presumed To Be Fair

A proposed settlement that is the "product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigations" enjoys a "presumption of fairness." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000). In such circumstances, "'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation." *In re PaineWebber Ltd. P'ships. Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997).

This Court previously found that Plaintiffs' Counsel has the requisite qualifications and experience in class actions to lead this litigation on behalf of the proposed Lender Class by appointing Plaintiffs' Counsel interim class counsel. *See* ECF No. 692. Additionally, Plaintiffs' Counsel was well-informed of all material facts, and the negotiations were non-collusive. *See* Lieberman Decl. ¶¶ 31-38. The Settlements were reached through arm's length negotiation over an extended period of time, which included multiple efforts and negotiations. *Id*. ¶¶ 31-37. The terms of the Settlements were negotiated through extensive meetings and discussions over the course of several months. *Id*. During this period of time, there were numerous telephone calls, emails and other communications regarding the settlements terms. In short, the Settlements were the product of a thorough, arm's length process, and as such, each enjoys a presumption of fairness.

## C.    The Settlements Are Fair And Reasonable Under Relevant *Grinnell* Factors

The Settlements return substantial cash payments and non-cash benefits that not only improve the short-term return to Lender Class Members, but also enhance the likelihood of recovery against Non-Settling Defendants. In addition, as set forth below, the *Grinnell* factors strongly merit preliminary approval of the Settlements.[2]

---

[2] The "*Grinnell* factors" are used in this circuit to evaluate whether a proposed class action settlement is substantively fair, reasonable and adequate *for purposes of final approval* include: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater

### 1.   The Complexity, Expense, and Likely Duration of the Litigation

It is well recognized that claims involving collusion and price manipulation among industry participants are "complicated, lengthy, and bitterly fought, as well as costly." *In re Vitamin C Antitrust Litig.*, No. 06 MDL. 1738, 2012 WL 5289514, at *4 (E.D.N.Y. Oct. 23, 2012) (discussing federal antitrust cases) (citations and internal quotes omitted); *see also In re Sumitomo Copper Litig.,* 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999) ("[G]enerally, price manipulation cases are notoriously risky and are more difficult and risky than securities fraud cases[.]"); *Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 263 (2d Cir. 2001) (noting the "factual complexities of antitrust cases"). Lender Plaintiffs' action is no exception. The complexity and the hard-fought battles in this Action involving fraud and civil conspiracy to manipulate LIBOR is reflected in the numerous fully briefed motions and opinions in the case since the original complaint was filed on July 25, 2012. *See* Lieberman Decl. ¶¶ 5-30. This case provides, as the Court has recognized in preliminarily approving a partial settlement by the Exchange-Based plaintiffs, a stark example of complex and protracted litigation. *See LIBOR*, 2014 WL 6851096, at *2 (plaintiffs "must prove a factually complex case with genuine legal uncertainties").

In the absence of these Settlements, the litigation of this complex case would likely consume many more years of the Court's resources. *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003) ("[t]he potential for this litigation to result in great expense and to continue for a long time suggest that settlement is in the best interests of the Class") (citation omitted). The Settlements allow Plaintiffs to avoid the significant expense of continued and protracted litigation against the Settling Defendants. Even if the Class succeeded at every stage through summary judgment, they would then face the uncertainty of a jury trial,

---

judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *City of Detroit v. Grinnell Corp*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.,* 209 F.3d 43 (2d Cir. 2000).

4

which would almost certainly be followed by lengthy and expensive appeals. *Fleisher v. Phoenix Life Ins. Co.*, No. 11 Civ. 8405 (CM), 2015 WL 10847814, at *9 (S.D.N.Y. Sept. 9, 2015) (citing *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 65 (S.D.N.Y. 1993)). Thus, the first *Grinnell* factor favors preliminary approval of the proposed Settlements.

### 2.      The Reaction of the Class to the Settlements

It is premature to consider the Class's reaction to the Settlement, since notice has not yet been disseminated. *See Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 34 (E.D.N.Y. 2006). Each of the Lender Plaintiffs approves the Settlements. Should any objections from Class members be received prior to the fairness hearing, Lender Plaintiffs' Counsel will timely address those concerns in connection with the final approval process.

### 3.      The Stage of the Proceedings

The third *Grinnell* factor, which looks to the "stage of the proceedings and the amount of discovery completed," *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 117 (2d Cir. 2005), focuses on whether the plaintiffs "obtained sufficient information through discovery to properly evaluate their case and to assess the adequacy of any settlement proposal." *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207 (JGK), 2010 WL 3119374, at *3 (S.D.N.Y. Aug. 6, 2010). The lack of formal discovery does not preclude approval of a settlement. *In re AOL Time Warner, Inc.*, No. 02 Civ. 5575 (SWK), 2006 WL 903236, at *10 (S.D.N.Y. Apr 6, 2006). Rather, it is enough for the Parties to have "engaged in sufficient investigation of the facts to enable the Court to 'intelligently make…an appraisal' of the Settlement." *Id.*

Here, the depth of understanding about Plaintiffs' claims lends strong support to preliminary approval. Since initiating this litigation in July 2012, Lender Plaintiffs' Counsel has gained a substantial understanding of the case. Plaintiffs have actively litigated their claims for over five years. Lieberman Decl. ¶¶ 5-30. During the pendency of the litigation, Plaintiffs have responded to motions to dismiss and other dispositive motions, and largely prevailed, in addition

5

to developing theories of liability unique to the class. *E.g., id*. In addition, Lender Plaintiffs' Counsel have reviewed millions of pages of documents in connection with class certification discovery, worked extensively with industry experts, and worked with economists to analyze transactional data. *Id.* ¶ 38. The information gained through the hard-fought litigation has provided Lender Plaintiffs' Counsel with a comprehensive understanding of the relative strengths and weaknesses of Lender Plaintiffs' claims and to negotiate settlements which provide excellent relief for the class. Thus, this factor supports preliminary approval of the proposed Settlements.

### 4.    The Risks of Establishing Liability and Damages

"In assessing the Settlement, the Court should balance the benefits afforded the Class, including the *immediacy* and *certainty* of a recovery, against the continuing risks of litigation." *In re Top Tankers, Inc. Sec. Litig.*, No. 06 CIV. 13761 (CM), 2008 U.S. Dist. WL 2944620, at *4 (S.D.N.Y. July 31, 2008) (emphasis in original). In this case, the risks of establishing liability and damages are significant and are amplified by the complexity of the LIBOR market. "The complexity of Plaintiff's claims *ipso facto* creates uncertainty . . . . A trial on these issues would likely be confusing to a jury." *Park v. The Thomson Corp.*, No. 05 Civ. 2931, 2008 WL 4684232, at *4 (S.D.N.Y. Oct. 22, 2008); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 475 (S.D.N.Y. 1998) ("*NASDAQ II*") (noting difficulty and uncertainty of proving liability to a jury, "especially in a case of this complexity and magnitude"). Furthermore, Defendants are wealthy global financial institutions that are represented by some of the best law firms in the United States and can afford to litigate this case indefinitely. Had Settling Defendants not agreed to settle, they were prepared, and had the wherewithal, to vigorously contest liability and class certification. "Establishing otherwise [would] require considerable additional pre-trial effort and a lengthy trial, the outcome of which is uncertain." *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 199 (S.D.N.Y. 2012), *aff'd sub nom.*, *Charron v.*

*Wiener*, 731 F.3d 241 (2d Cir. 2013). Notably, this Court has ruled that it lacks personal jurisdiction over the foreign bank defendants, including HSBC.

Even if liability were established, Plaintiffs would face the difficulties and complexities inherent in proving damages to the jury. Plaintiffs' theory of damages would be hotly contested at trial, and there is no doubt that, at trial, the issue would inevitably involve a "battle of the experts." *NASDAQ II*, 187 F.R.D. at 476. "In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985). Thus, there is a substantial risk that a jury might accept one or more of Defendants' damage arguments, or award far less than the total settlement amount, or nothing at all.

In sum, "[t]here is a substantial risk that the plaintiff might not be able to establish liability at all and, even assuming a favorable jury verdict, if the matter is fully litigated and appealed, any recovery would be years away." *Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*, No. 85 CIV. 3048 (JMW), 1987 U.S. Dist. WL 7030, at *3 (S.D.N.Y. Feb. 13, 1987). Accordingly, this factor weighs in favor of preliminary approval.

### 5.    The Risks of Maintaining the Class Action through Trial

Although Plaintiffs believe they will win a contested motion for class certification, "it is at least possible that variations among the [plaintiffs] or other factors might have complicated plaintiffs' class-certification bid." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 665 (S.D.N.Y. 2015). If the Court certified the class proposed in this litigation, defendants would almost certainly seek interlocutory appeal pursuant to Fed. R. Civ. P. 23(f), which would have the potential to delay the resolution of this litigation substantially. *See id.* The inherent "uncertainty of maintaining a class through trial" weighs in favor of settlement. *Id.* The risks associated with class certification weigh in favor of approving the Settlements.

6. **The Ability of Settling Defendants To Withstand a Greater Judgment**

While it is likely that Settling Defendants could withstand a greater judgment than their respective settlement amounts this fact should not weigh against granting preliminary approval. Measured against the other *Grinnell* factors, "[t]he mere fact that a defendant 'is able to pay more than it offers in settlement does not, standing alone, indicate the settlement is unreasonable or inadequate." *Fleisher v. Phoenix Life Ins. Co.*, No. 11-cv-8405 (CM), 2015 U.S. Dist. LEXIS 121574, *33 (S.D.N.Y. Sept. 9, 2015) (quoting *Global Crossing*, 225 F.R.D. at 460); *see also In re Sinus Buster Prods. Consumer Litig.*, No. 12-CV-2429 (ADS) (AKT), 2014 U.S. Dist. WL 5819921, at *11 (E.D.N.Y. Nov. 10, 2014) ("Courts have recognized that the defendant's ability to pay is much less important than the other factors, especially where the other *Grinnell* factors weigh heavily in favor of settlement approval.") (quoting *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 339 (E.D.N.Y. 2010).

7. **The Reasonableness of the Settlements in Light of the Best Possible Recovery and the Attendant Risks of Litigation**

Fundamental to a determination of whether a settlement is fair, reasonable, and adequate "'is the need to compare the terms of the compromise with the *likely* rewards of litigation.'" *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995) (emphasis added and citation omitted). The determination of a reasonable settlement is not susceptible to a simple mathematical equation yielding a particular sum. Rather, "in any case there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). In applying these factors, "[d]ollar amounts [of class action settlements] are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762

(E.D.N.Y. 1984); *see also NASDAQ III*, 187 F.R.D. at 478 ("Ultimately, the exact amount of damages need not be adjudicated for purposes of settlement approval.").

Continuing to litigate against the Settling Defendants would be time-consuming and expensive, and would involve complex legal and factual issues and vigorously contested motion practice, including class certification and summary judgment with no certainty of success. *See Wal-Mart*, 396 F.3d at 122. This is particularly true given that this Court has determined that it lacks personal jurisdiction over HSBC. Continued litigation would also involve extensive expert testimony with regard to damages. *See NASDAQ II,* 187 F.R.D. at 476. Additionally, even after trial is concluded, there could potentially be one or more lengthy appeals. *See In re Michael Milken & Assocs.*, 150 F.R.D. at 65. Given this uncertainty, "[a] very large bird in the hand of this litigation is surely worth more than whatever birds are lurking in the bushes." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995); *see also In re IPO Sec. Litig.*, 260 F.R.D. 81, 118-19 (S.D.N.Y. 2009). The risks of these remaining stages of a successful case are arguably dispositive for these *Grinnell* factors. *See In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 270 (S.D.N.Y. 2012) ("[T]he propriety of a given settlement amount is a function of both (1) the size of the amount relative to the best possible recovery; and (2) the likelihood of non-recovery (or reduced recovery).").

The certainty of a recovery now, compared to an uncertain recovery, if at all, years from now, weighs heavily in favor of preliminary approval. *See AOL Time Warner*, 2006 WL 903236, at *13 ("[T]he benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery."). In comparison to the risks of continuing litigation, the two Settlements provide Plaintiffs and the Class substantial benefits, including significant cash compensation, in an aggregate amount of $27,000,000, reflecting the payment of $23 million from Citibank and $4 million from HSBC. Each of the Settlements likewise offers immediate and substantial cooperation, which provide continued access to documents and transactional data, which will

9

assist Plaintiffs in their continued litigation against the Non-Settling Defendants. Citibank Agreement ¶ 14; HSBC Agreement ¶ 14. *See, e.g., In re IPO Sec. Litig.*, 226 F.R.D. 186, 198-99 (S.D.N.Y. 2005) (approving settlement largely on the basis of intangible benefits, including cooperating against non-settling defendants). Plaintiffs have also negotiated for and obtained another benefit here: there shall be no reversion to the Settling Defendants of unclaimed funds. *See* Citibank Agreement at ¶ 11(j); HSBC Agreement at ¶ 11(j).

Given the substantial risks here and the fact that these early, partial settlements are a judicially well-recognized strategic step to assist Plaintiffs in the case against the Non-Settling Defendants, each of the relevant *Grinnell* factors weighs in favor of this Court granting preliminary approval to the Settlements.

## IV.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED

In accordance with the Settlement Agreements, Plaintiffs respectfully request that the Court certify the following class for settlement purposes:

> All lending institutions headquartered in the United States, including its fifty (50) states and United States territories, that originated loans, held loans, purchased whole loans, purchased interests in loans or sold loans with interest rates tied to USD LIBOR, which rates adjusted at any time between August 1, 2007 and May 31, 2010 (the "Class Period").

Citibank Agreement ¶ 3(a); HSBC Agreement ¶ 3(a).

Certification of a settlement class is proper where the proposed settlement class satisfies the four requirements of Rule 23(a) and at least one subsection of Rule 23(b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). When considering certification of a settlement class, "courts must take a liberal rather than restrictive approach." *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157-58 (E.D.N.Y. 2009). The proposed settlement class satisfies the requirements for certification and should be certified for the reasons explained below.

### A.    Rule 23(a) Requirements

The Supreme Court has explained the Rule 23(a) factors as follows:

> Rule 23(a) states four threshold requirements applicable to all class actions: (1) numerosity (a "class [so large] that joinder of all members is impracticable"); (2) commonality ("questions of law or fact common to the class"); (3) typicality (named parties' claims or defenses "are typical . . . of the class"); and (4) adequacy of representation (representatives "will fairly and adequately protect the interests of the class").

*Amchem*, 521 U.S. at 613. The proposed settlement Class meets each of these requirements.

### 1.    Rule 23(a)(1) -- Numerosity

Rule 23(a)(1) requires that the class be so numerous that joinder of all members would be "impracticable."  Impracticable does not mean impossible, but only that the difficulty of joining all class members make use of the class action appropriate. *Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244-45 (2d Cir. 2007).  Further, a plaintiff need not allege the exact number or identity of class members.  *See In re Blech Sec. Litig.*, 187 F.R.D. 97 at 103 (S.D.N.Y. 1999).  "Joinder is generally presumed to be impracticable when a putative class exceeds 40 members." *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 90 (D. Conn. 2010) (citing *Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997)). Thousands, if not millions, of loans were made in the U.S. during the Class Period tied to USD LIBOR by thousands of financial institutions.  As set forth in Plaintiffs' complaint, "Independent research indicates that around $350 trillion of swaps and $10 trillion of loans are indexed to BBA LIBOR." ECF No. 1383 ¶ 59. With a class this large, joinder is not only impractical, but likely impossible.  Thus, Rule 23(a)(1) is satisfied. *See, e.g., In re Sumitomo Copper Litig.*, 194 F.R.D. 480, 482 (S.D.N.Y. 2000), *aff'd*, 262 F. 3d 134 (2d Cir. 2001).

### 2.    Rule 23(a)(2) -- Commonality

The Rule 23(a)(2) requirement that "there are questions of law or fact common to the class" is a "low hurdle" that is "easily surmounted." *See In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 163 F.R.D. 200, 206 n.8 (S.D.N.Y. 1995). Commonality "is established so long as the plaintiffs can identify some unifying thread among the [class] members' claims." *Haddock v. Nationwide Fin. Services, Inc.*, 262 F.R.D. 97, 116 (D. Conn. 2009), *vacated and*

*remanded sub nom. Nationwide Life Ins. Co. v. Haddock*, 460 Fed. Appx. 26 (2d Cir. 2012). Even a single common legal or factual question will suffice. *See In re Agent Orange Prod. Liab. Litig*. MDL No. 381, 818 F.2d 145, 166-67 (2d Cir. 1987).

Here, common questions of law and fact include: (i) whether Defendants' USD LIBOR submissions were false; (ii) whether the submissions were material; (iii) whether Defendants made the false submissions with the intent to deceive; (iv) whether Defendants conspired with other Panel Banks concerning their submissions; (v) whether USD LIBOR was suppressed; (vi) the amount by which USD LIBOR was suppressed; (vii) whether Defendants' false USD LIBOR submissions proximately caused injury to Plaintiff and the Class members; and (viii) whether Defendants fraudulently concealed their scheme. "An alleged scheme to defraud which affects a class of people is a common question of law and/or fact, regardless of the characteristics of the scheme's intended victims." *Demney v. Jenkins & Gilchrist,* 230 F.R.D. 317, 330 n.81 (S.D.N.Y. 2005), *vacated in part on other grounds,* 443 F.3d 253, 276 (2d Cir. 2006). (citation omitted). Accordingly, the commonality requirement is satisfied.

### 3.      Rule 23(a)(3) -- Typicality

Typicality is present when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). "Since the claims only need to share the same essential characteristics, and need not be identical, the typicality requirement is not highly demanding." *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 155 (S.D.N.Y. 2002).

Plaintiffs' claims and injuries are the same as the Lender Class. Specifically, Plaintiffs' central claim is that the Settling Defendants and the other banks belonging to the LIBOR panel intentionally suppressed LIBOR rates. Plaintiffs were injured because they made/held USD LIBOR-based loans that adjusted during the Class Period, and, by definition, so did each Class

member. "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). Typicality is thus satisfied.

### 4.    Rule 23(a)(4) -- Adequacy

The Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class" is unquestionably met. The focus of a court's inquiry is "whether: 1) plaintiff's interests are antagonistic to other class members; and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000) (citation omitted).

Here, both requirements are satisfied. The adequacy prerequisite is satisfied here. All members of the Class have claims arising from the same alleged course of conduct and the same legal theories as Plaintiffs. This is sufficient. Second, Plaintiffs have demonstrated their effective representation of the interests of the Class by selecting qualified counsel. Plaintiffs' Counsel are highly qualified and, as reflected herein, have vigorously pursued this litigation on behalf of the Plaintiffs and the putative Class. *See also* Lieberman Decl. ¶¶ 5-30, Ex. 3 (Firm Resume).

### B.    Rule 23(b)(3) Requirements

The Class also satisfies the requirements of Rule 23(b)(3) that (i) common issues predominate over individual issues, and (ii) a class action is the superior method of adjudicating this controversy. Fed. R. Civ. P. 23(b)(3).

### 1.    Predominance

Rule 23(b)(3)'s predominance requirement tests whether "a proposed class is sufficiently cohesive to warrant adjudication by representation." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 469 (2013) (citation omitted). Predominance is satisfied where the questions that are capable of proof by generalized evidence "are more substantial than the issues

subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (citation omitted). Rule 23(b)(3) "does not require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. at 469.  "What the rule does require is that common questions 'predominate over any questions affecting only individual [class] members.'" *Id.* (emphasis and brackets in original) (quoting Fed. R. Civ. P. 23(b)(3)).  Where liability can be proved class-wide, it is "'well-established' Second Circuit precedent that 'the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification' under Rule 23(b)(3).'" *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (citation omitted)

In the settlement context, "the predominance inquiry will sometimes be easier to satisfy" because settlement eliminates manageability problems related to trial. *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 240 (2d Cir. 2012). The judicial economy at issue for a settlement class is obtained through the effectuation of the settlement itself, rather than through a trial of the class' claims. *See Amchem*, 521 U.S. at 620. For a settlement class, "certification pursuant to Rule 23(b)(3) . . . is appropriate 'whenever the actual interests of the parties can be served best by settling their differences in a single action.'" *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1022 (9th Cir. 1998) (quoting 7A Wright, Miller & Kane, *Federal Practice and Procedure,* §1777 (2d ed.1986)). Specifically, "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id.*; *see also In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 517 (S.D.N.Y. 1996) (stating that predominance test standard is met "unless it is clear that individual issues will overwhelm the common questions and render the class action valueless").

The centrality of the common question of whether Settling Defendants engaged in an unlawful conspiracy and manipulation of LIBOR, combined with the eight categories of

evidence detailed above, *supra* 12, establishes that common issues predominate. *See Cordes & Co. Fin. Services, Inc. v. A.G. Edwards & Sons, Inc*., 502 F.3d 91, 105 (2d Cir. 2007) (allegations of existence of price-fixing conspiracy are susceptible to common proof); *In re Platinum & Palladium Commodities, Litig.*, No. 10 Civ. 3617, 2014 WL 3500655, at *10 (S.D.N.Y. July 15, 2014) (in granting preliminary approval of settlement, finding Rule 23(b)(3) predominance element satisfied concerning Defendants' alleged market manipulation).[3]

### 2.    Superiority

The superiority prong requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court must balance the advantages of class action treatment against alternative available methods of adjudication. *See* Fed. R. Civ. P. 23(b)(3) (listing four non-exclusive factors relevant to this determination). The superiority requirement, however, is applied in a more lenient fashion in the settlement context because the Court "need not inquire whether the case, if tired, would present intractable management problems." *Amchem*, 521 U.S. at 620; *Am. Int'l Group*, 689 F.3d at 239, 240.[4]

A class action is the superior method for the fair and efficient adjudication of the Action. First, Class members are significant in number and geographically disbursed, making a "class

---

[3] Issues of reliance do not predominate because USD LIBOR was uniformly misrepresented to all Class members. *See Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002) (action was an "appropriate subject[] for class certification because the standardized misrepresentations may be established by generalized proof."); *McLaughlin v. Am. Tobacco Co*., 522 F.3d 215, 225 (2d Cir. 2008) ("[P]roof of reliance by circumstantial evidence may be sufficient under certain conditions."); *Catholic Health Care West v. US Foodserv. (In re U.S. Foodservice Inc. Pricing Litig.)*, 729 F.3d 108, 120 (2d Cir. 2013) (affirming certification of a fraud class because it was reasonable to infer reliance on fraudulently inflated invoices from the fact that customers paid the invoice price and the "generalized proof of [the defendant's] concealment of its billing practices").

[4] Even outside the settlement posture, courts routinely certify multistate and nationwide common law fraud class actions. *See, e.g. Ebin v. Kangadis Food Inc*., 297 F.R.D. 561, 570 (S.D.N.Y. 2014) (certifying fraud class because "elements of the common law of fraud are sufficiently similar across jurisdictions"); *Hart v. BHH, LLC*, 2017 U.S. Dist. LEXIS 105187, at *24 (S.D.N.Y. July 7, 2017) (certifying nationwide fraud class); *Rodriguez v. It's Just Lunch, Int'l*, 300 F.R.D. 125, 141 (S.D.N.Y. 2014) (certifying a nationwide common-law fraud action); *Spencer v. Hartford Fin. Servs. Grp., Inc.*, 256 F.R.D. 284, 300 (D. Conn. 2009) (certifying multistate fraud class because "the fundamental elements of fraud are substantially similar from state to state" and any differences in law could be addressed in the verdict form); *Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51, 58 (S.D.N.Y. 1993) (certifying nationwide class of fraud claims)

action the superior method for the fair and efficient adjudication of the controversy." *In re Currency Conversion Fee Antitrust Litig.*, 224 F.R.D. 555, 566 (S.D.N.Y. 2004). Second, the majority of Class members have neither the incentive nor the means to litigate these claims individually. A class action allows members of the Class to "pool claims which would be uneconomical to litigate individually," as "no individual may have recoverable damages in an amount that would induce him to commence litigation on his own behalf." *Currency Conversion*, 224 F.R.D. at 566; *see also Seijas v. Republic of Argentina.,* 606 F.3d 53, 58 (2d Cir. 2010)). "Under such circumstances, a class action is efficient and serves the interest of justice." *Id.*

### C.    Plaintiffs' Counsel Should Be Appointed Counsel for the Lender Class

Pursuant to Rule 23(g), a court that certifies a class must appoint class counsel, who is charged with fairly and adequately representing the interests of the class. *See* Fed. R. Civ. P. 23(g)(1). In determining class counsel, the Court must consider: (i) the work undertaken by counsel in identifying or investigating the potential claims; (ii) counsel's experience in handling class actions, other complex litigation, and similar claims; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. *Id.*

The Court has previously acknowledged the qualifications of proposed class counsel – Pomerantz LLP – when it appointed the firm as Interim Lead Counsel for the Lender class. *See* ECF No. 692. Plaintiffs' Counsel have actively litigated the claims in this Action, have committed massive time, resources, and skills to the successful representation of Plaintiffs, and at all times have acted in the best interests of the proposed Lender Class. Plaintiffs, accordingly, respectfully request that the Court preliminarily appoint Pomerantz LLP as class counsel for the Lender Class.

**V.    THE PROPOSED NOTICE PLAN SHOULD BE APPROVED**

**A.    Plaintiffs' Proposed Notice Program, which Provides Direct Notice to All Reasonably Ascertainable Lender Class Members as well as a Robust Publication Notice, Is the Best Practicable Under the Circumstances**

"For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Long v. HSBC USA Inc.*, No. 14 CIV. 6233 HBP, 2015 WL 5444651, at *10 (S.D.N.Y. Sept. 11, 2015). However, neither individual nor actual notice to each class member is a required; rather, "class counsel [need only] act[] reasonably in selecting means likely to inform the persons affected." *Jermyn v. Best Buy Stores, L.P.*, No. 08 CIV. 00214 CM, 2010 WL 5187746, at *3 (S.D.N.Y. Dec. 6, 2010) (citing *Weigner v. City of New York*, 852 F.2d 646, 649 (2d Cir. 1988)); *In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*, 271 F. App'x 41, 44 (2d Cir. 2008) ("It is clear that for due process to be satisfied, not every class member need receive actual notice[.]"). In evaluating the reasonableness of a proposed notice program, the "Court has virtually complete discretion." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 345 (E.D.N.Y. 2010). Here, Plaintiffs, in consultation with Claims Administrator JND Legal Administration ("JND" or "Claims Administrator"), propose a thorough, multi-pronged Notice Program designed to provide reasonable and practicable notice to Lender Class Members. *See* Declaration of Jennifer M. Keough ("Keough Decl."), ¶¶ 4-12.

First, copies of the Court approved individual Notice and Proof of Claim Form will be sent to all entities on a proprietary list of at least 255,000 entities that held loans, which consist of U.S. banks, savings institutions, credit unions, personal credit institutions, trusts and asset-backed securities entities compiled by organizations such as InfoUSA. Keough Decl., ¶ 5.

Second, a proposed summary notice publication program has been designed to reach additional potential Lender Class Members who may not receive the individual Notice. The array of relevant summary notice publication sources was selected to reasonably maximize the impact

of the notice in light of the individuals and entities targeted. The form of Summary Notice has been carefully tailored both as to scope and content, and was drafted to be easily understood and to explain how interested parties can obtain additional information about the Settlements. *Id.* ¶ 11. The Summary Notice publication program is three-pronged. First, the proposed Summary Notice will be published once in three financial publications: the *IBD Weekly*, *The Wall Street Journal* and *Barron's*. *Id.* ¶ 5. Second, the summary notice publication program will target investment related websites: Yahoo! Finance, Investors.com, Barrons.com, Marketwatch.com and WSJ.com, as well as placements through the Targeted Digital Audience Network. *Id.* Banner ads will run on these websites over the course of a month, each highlighting the Settlements and providing a direct link to the Lenders Website. *Id.* Finally, there will be a press release issued on PR Newswire. *Id.*

Third, Plaintiffs propose to establish the Lenders Website at www.LendersLIBORSettlements.com. The Notice and Summary Notice will refer potential Lender Class Members to the Lenders Website, which will be designed to enable them to obtain complete information on the Settlements and the procedures to file a claim, as well as to view and download copies of relevant documents. *See* Keough Decl., ¶¶ 6-8. Plaintiffs will also establish a toll-free number to a dedicated call center, where potential Lender Class Members will be able to clarify issues and get answers to questions they may have, or simply obtain additional information about the Settlements. *See id.*, ¶ 9.

Courts routinely approve notice programs, like this one, that combine direct notice and publication notice. *See, e.g., Sykes v. Mel S. Harris & Assocs., LLC*, No. 09 Civ. 8486 (DC), 2015 U.S. Dist. LEXIS 170179, ** 19-20 (S.D.N.Y. Nov. 16, 2015) (Court found providing individual and publication notice met "the requirements of due process, Fed. R. Civ. P. 23, the Rules of this Court, and any other applicable law, constitute[d] the best notice practicable under the circumstances, and constitute[d] due and sufficient notice to all persons and entities entitled

to such notice."); *In re Platinum & Palladium Commodities Litig.*, No. 10 CV 3617, 2015 U.S. Dist. LEXIS 178127, at *6 (S.D.N.Y. Feb. 27, 2015) (Court found individual notice "to those members of the Futures Class who were able to be identified through reasonable efforts" and publication notice "in three publications and through a settlement website" constituted "the best notice practicable under the circumstances," and "fully complied in all respects with the requirements of Rule 23 of the Federal Rules of Civil Procedure, due process of law, and other applicable law."); *In re Vitamin C Antitrust Litig.,* No. 06-MD-1738 (BMC) (JO) 2012 U.S. Dist. LEXIS 152275, at *27 (E.D.N.Y. Oct. 23, 2012) (Court found contents of class notice "provide[d] sufficient information about the lawsuit, the parties, the risks and rights of class members, and the procedures by which a class member can exclude himself from a class or object to the settlements" and that notice "was also distributed widely, through the internet, print publications, and targeted mailings" and concluded "the distribution of the class notice was adequate.").

For these reasons, Plaintiffs' proposed Notice Program is the best notice practicable under the circumstances, and merits approval.

### B.   The Individual Notice, the Summary Notice, and the Proof of Claim Form Comply with Rule 23(c)(2)(B) and Comport with Due Process

A class-action settlement notice must (i) "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings" and (ii) be written so as to "be understood by the average class member." *Wal-Mart Stores, Inc. v. Visa USA., Inc.,* 396 F.3d 96, 114-15 (2d Cir. 2005) (quoting *Weinberger v. Kendrick,* 698 F.2d 61, 70 (2d Cir. 1982)); *see also Vitamin C Antitrust Litig.*, 2012 U.S. Dist. LEXIS 152275, at *26 ("There are no rigid rules to determine whether a settlement notice satisfies constitutional or Rule 23(e) requirements[.]") (quotation omitted)). Factors that courts typically consider include whether (i) there is "a succinct description of the substance of the action and the parties' positions"; (ii) "the parties, class counsel, and class

representatives have been identified"; (iii) "the relief sought has been indicated"; (iv) "the risks of being a class member, including the risk of being bound by the judgment have been explained"; (v) "the procedures and deadlines for opting out have been clearly explained"; and (vi) "class members have been informed of their right to appear in the action through counsel." *Vitamin C Antitrust Litig.*, 2012 U.S. Dist. LEXIS 152275, at *26-*27 (citing *In re Payment Interchange Fee & Merch. Discount Antitrust Litig.,* No. 05-MD-1720, 2008 U.S. Dist. LEXIS 1369 (E.D.N.Y. Jan. 8, 2008)).

The proposed Notice explains, in clear and concise language, the legal options and monetary benefits available to Lender Class Members under the Settlements. The Notice was drafted in coordination with JND, the Claims Administrator, which has substantial experience and expertise related to the form and content of notice and in implementing and managing the claims process in complex class action litigation such as the Lender Action. *See* Keough Decl., ¶¶ 2-3.

As discussed above, the Notice will be mailed directly to potential Lender Class Members, and the Summary Notice will be published in multiple targeted print media, online digital sites, and through a press release. In JND's professional opinion, the Notice "is drafted using clear, simple, and straightforward language, and is presented in an easy to follow and understand format." Keough Decl., ¶ 10. JND designed the Notice Program "to reach the greatest practicable number of potential Lender Class Members and ensure that they will be exposed to, see, review and understand the Notice." *Id*. The Notice was drafted using a question and answer format that provides a simple step-by-step explanation of critical issues related to the litigation and the proposed Settlements, and sets out relevant information about the subject of the litigation, the Lender Class definition and the rights available to Lender Class Members. *Id*.

The proposed Summary Notice was likewise "drafted to be easy to read and understand, and provide potential Lender Class Members with basic information about the Lender Action

and the proposed Settlements, and explain how to obtain additional information, including copies of the Notice and Proof of Claim Form." *Id.*, ¶ 11. The proposed Summary Notice directs Lender Class Members to the Lender Website, where the full Notice and other documents related to the Settlements are available. These documents will include, for example, the individual settlement agreements with each of the Settling Defendants, the operative Lender Second Amended Class Action Complaint, the Notice, the Plan of Distribution, and the Proof of Claim Form. *See Id.*

The Notice contains similar, but more comprehensive information than the Summary Notice. Specifically, the Notice describes in plain, easily understood language: (i) the nature of the Lender Action; (ii) the fraud and civil conspiracy claim pleaded; (iii) the scope of the releases set forth in each of the two separate Settlement Agreements; (iv) the definition of the Lender Class; (v) the monetary benefits available to the Lender Class Members, including the Plan of Distribution, Plaintiffs' Counsel's intention to move for an award of fees, expenses, and service awards for the Lender Class representatives, and the maximum size of those awards (as well as the timing of that motion); (vi) the deadline and procedure for submitting a claim (and the necessity to submit a claim to receive benefits under the Settlements); (vii) the deadlines and procedures for excluding oneself from the Lender Class, objecting to any of the Settlements, and attending the fairness hearing; (viii) that Lender Class Members may, but need not, appear through their own counsel at the fairness hearing; (ix) the binding effect of the Judgments under Rule 23(c); and (x) the identity of Plaintiffs' Counsel. *See* Keough Decl., ¶ 11. The proposed Notice satisfies Federal Rule of Civil Procedure 23(c)(2)(B).[5]

The Proof of Claim Form itself is simple to understand and to submit. This simplicity should reasonably increase claims rates, while eliciting sufficient information for JND, in conjunction with Lender Plaintiffs' Counsel and their consulting experts, to assess Lender Class

_____

[5] *See* Fed. R. Civ. P. 23(c)(2)(B) (requiring that the notice state in clear and concise language: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c).").

Members' claims and evaluate any potentially fraudulent or errant submissions. *See* Keough Decl., ¶ 12. The Proof of Claim Form has been designed to permit submission either electronically or in paper, at the Lender Class Members' election. *See id.*. This is sufficient. *See, e.g., In re CertainTeed Corp. Roofing Shingle Prods. Liability Litig.*, 269 F.R.D. 468, 482-84 (E.D. Pa. 2010).

## VI.    THE PLAN OF DISTRIBUTION SHOULD BE APPROVED

The relevant standards for ***final*** approval of a plan of distribution were set forth recently by Judge Cote:

> A district court "has broad supervisory powers with respect to the ... allocation of settlement funds." *In re Holocaust Victim Assets Litig.,* 424 F.3d 132, 146 (2d Cir. 2005) (citation omitted). The plan of allocation must "meet the standards by which the settlement [is] scrutinized — namely, it must be fair and adequate." *Hart v. RCI Hosp. Holdings, Inc.,* No. 09cv3043 (PAE), 2015 WL 5577713, at *12 (S.D.N.Y. Sept. 22, 2015) (quoting *In re WorldCom, Inc. Sec. Litig.,* 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005)). A plan "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Id.* (quoting *In re WorldCom, Inc.,* 388 F. Supp. 2d at 344). A principal goal of a plan of distribution must be the equitable and timely distribution of a settlement fund without burdening the process in a way that will unduly waste the fund.
>
> "[I]n the case of a large class action the apportionment of a settlement can never be tailored to the rights of each plaintiff with mathematical precision." *In re PaineWebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 133 (S.D.N.Y.), *aff'd In re PaineWebber Inc. Ltd. P'ships Litig.,* 117 F.3d 721 (2d Cir. 1997). The challenge of precisely apportioning damages to victims is often magnified in antitrust cases, as "damage issues in [antitrust] cases are rarely susceptible of the kind of concrete, detailed proof of injury which is available in other contexts." *J. Truett Payne Co., Inc. v. Chrysler Motors Corp.,* 451 U.S. 557, 565 (1981) (citation omitted); *see also In re Elec. Books Antitrust Litig.,* No. 11md2293 (DLC), 2014 WL 1282293, at *16 (S.D.N.Y. Mar. 28, 2014).

*In re Credit Default Swaps Antitrust Litig.*, No. 13MD2476 (DLC), 2016 WL 2731524, at *9 (S.D.N.Y. Apr. 26, 2016). Here, the issue is not whether the proposed Plan of Distribution should be finally approved. Rather, on this motion for preliminary approval of the Plan of Distribution, the only question is whether the proposed Plan of Distribution is sufficiently

reasonable to be *sent* to Lender Class Members, for their review and comment, prior to the final approval hearing. *See, e.g.*, *Sykes v. Mel. S. Harris & Assocs., LLC*, No. 09 Civ. 8486 (DC), 2016 U.S. Dist. LEXIS 74566 *20 (S.D.N.Y. May 24, 2016) (Court "found preliminarily that the Settlement, as reflected in the Settlement Agreements and Lead Plaintiffs' Allocation Plan, was sufficiently fair, reasonable and adequate to warrant providing notice to the Classes and scheduling a fairness hearing."). It clearly is.

Plaintiffs have retained Dr. Robert Webb and Fideres Partners LLP to develop a model of the "but-for" world, that is an estimate of what LIBOR would have been, in each relevant tenor, and for each day during the Class Period, absent its suppression as alleged in this case. There is a clear rational basis for this proposal. *E.g.*, *Precision Products v. Panalpina World Transp., Ltd.*, 08-cv-42 (JG) (VVP) 2013 U.S. Dist. LEXIS 121795, at *57-*58 (E.D.N.Y. Aug. 27, 2013).

Plaintiffs propose to distribute the Net Settlement Fund to eligible Lender Class Members *pro rata*. *See* Lieberman Decl., ¶ 7. Courts routinely approve *pro-rata* distributions similar to that proposed here. *See*, *e.g.*, *Xuechen Yang v. Focus Media Holding Ltd.,* No. 11-civ-9051 (CM) (GWG), 2014 U.S. Dist. LEXIS 126738, *28 (S.D.N.Y. Sept. 4, 2014) ("Pro-rata distribution of settlement funds based on investment loss is clearly a reasonable approach." (citation omitted)). Lender Plaintiffs' Counsel recommend the proposed Plan of Distribution as being in the best interests of the Lender Class. Lieberman Decl., ¶ 7. *See, e.g.*, *In re EVCI Career Colleges Holding Corp. Sec. Litig.,* No. 05 Civ. 10240 (CM), 2007 U.S. Dist. LEXIS 57918, at *32 (S.D.N.Y. July 27,2007) ("in determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel").

The Plan proposes to distribute settlement monies in accordance with Plaintiffs' contentions that produced the Settlements, subject to reasonable legal risk adjustments based upon this Court's prior rulings (*i.e.* statute of limitations applicable to each state) and other strengths and weaknesses of the settled claims. Plans of distribution that reasonably seek to

allocate the settlement funds based on the varying strengths and weaknesses of the claims and amounts of impact, have long been found to be fair and reasonable. *See In re IMAX.*, 283 F.R.D. at 192 (citing *In re Lloyd's Am. Trust Fund Litig.,* No. 96 Civ. 1262(RWS), 2002 WL 31663577, at *18 (S.D.N.Y. Nov. 26, 2002) ("[c]lass action settlement benefits may be allocated by counsel in any reasonable or rational manner because allocation formulas reflect the comparative strengths and values of different categories of the claim") *see also In re Gulf Oil/Cities Serv. Tender Offer Litig*., 142 F.R.D. 588, 595-96 (S.D.N.Y. 1992) (plan of allocation that distributes greater part of settlement proceeds to those most injured is reasonable).

This proposal has more than a rational basis. If any Lender Class Member disagrees, they will have the opportunity to set forth the basis of their concerns in advance of the final approval hearing, when the fairness and adequacy of the Plan of Distribution will be evaluated.

## VII.   PROPOSED TIMETABLE

The proposed order submitted with the Motion calls for the setting of certain dates and deadlines. Lender Plaintiffs' Counsel respectfully propose the following procedural schedule:

| | |
|---|---|
| Individual Notice mailed to potential Lender Class Members (Preliminary Approval Order, ¶ 13) | 21 calendar days after entry of the Preliminary Approval Order |
| Summary Notice published (Preliminary Approval Order, ¶ 20) | 28 calendar days after entry of the Preliminary Approval Order |
| Deadline for papers in support of Settlement, Attorneys' Fees and Expense Award (Preliminary Approval Order, ¶ 29) | 35 calendar days before the Fairness Hearing |
| Deadline to file Proofs of Claims (Preliminary Approval Order, ¶ 22) | 35 days prior to Fairness Hearing, and at least 97 calendar days after entry of the Preliminary Approval Order and |
| Opt-Out Deadline (Preliminary Approval Order, ¶ 24) | 35 calendar days prior to Fairness Hearing |
| Objection Deadline (Preliminary Approval Order, ¶ 26) | 21 calendar days prior to the Fairness Hearing |
| Deadline for Plaintiffs to file response to objections and other reply papers in support of Settlement (Preliminary | 14 calendar days before the Fairness Hearing |

24

| | |
|---|---|
| Approval Order, ¶ 30) | |
| Fairness Hearing (Preliminary Approval Order, ¶ 6) | To be determined by the Court, approximately 138 calendar days after entry of the Preliminarily Approval Order |

## **CONCLUSION**

For the foregoing reasons, the Court should grant the Motion.


Dated: January 16, 2018
New York, New York


                                        **POMERANTZ LLP**
                                        */s/ Jeremy A. Lieberman*
                                        Jeremy A. Lieberman
                                        Michael J. Wernke
                                        600 Third Avenue, 20th Floor
                                        New York, New York 10016
                                        Telephone: (212) 661-1100
                                        Facsimile: (212) 661-8665
                                        Email: jalieberman@pomlaw.com
                                                mjwernke@pomlaw.com


                                        **POMERANTZ LLP**
                                        Patrick V. Dahlstrom
                                        10 South La Salle Street, Suite
                                        3505
                                        Chicago, Illinois 60603
                                        Telephone: (312) 377-1181
                                        Facsimile: (312) 377-1184
                                        Email: pdahlstrom@pomlaw.com


                                        *Counsel for Plaintiff The Berkshire Bank*

25